**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 15 B 41034 |
| RICHARD LEE FUGETT, | ) | |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| REED KONNERTH and CAPERS NORTH | ) | |
| AMERICA LLC, | ) | |
| | ) | Adv. No. 16 A 196 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge Pamela S. Hollis |
| RICHARD LEE FUGETT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the court on the motion of Defendant Richard Lee Fugett to dismiss the complaint filed against him by Plaintiffs Reed Konnerth and Capers North America LLC. For the reasons stated below, the court grants the motion to dismiss Counts I, II and IV. The motion to dismiss Count III is granted with leave to amend.

## SUMMARY

The issues that brought the parties to this court began with a dispute over a software business. Intelligent Solutions, Inc., ("ISI") along with several LLCs, developed, marketed and sold certain software known as CAPERS. Apparently the CAPERS software is used by public safety and other municipal entities, although the complaint provides few details.

Neither does the complaint provide many details regarding the relationships among the people involved in the case. About five years ago, two of the ISI shareholders (Tyson Garbrecht,

Denis Williams) sued the other two shareholders (Richard Fugett, Michael Koziol) as well as a third defendant (Reed Konnerth) in state court. Konnerth's relationship to the others is not clear from the complaint, but he was the sole member of Capers Worldwide and Capers North America, two entities that were involved in the CAPERS software business.

In the course of the shareholder lawsuit, the state court entered an order prohibiting Fugett, Koziol and Konnerth from doing anything outside the ordinary course of ISI's business. Nevertheless, within the next year, the Internal Revenue Service levied on ISI for failure to pay employment taxes. Fugett and Koziol were held in contempt of court. The complaint does not explain why there were no ramifications for the third defendant, Konnerth.

Amid promises that the tax debt would be paid, the parties decided to settle. They entered into several agreements to memorialize their settlement. Essentially Konnerth bought everyone out in return for the CAPERS software, although Garbrecht and Williams got a copy of the software and a license to use it. Fugett and Koziol agreed, among other terms, to pay the employment tax debt for which they had been held in contempt. The state court lawsuit was dismissed.

Koziol paid about half the tax debt by liquidating his 401(k). Despite promises that he would do the same, Fugett only made a few small payments. Less than three months after the parties settled they were back in court on Konnerth's motion to enforce the settlement. It is not clear from the complaint why Fugett's co-defendant brought the motion to enforce rather than the plaintiffs, Garbrecht and Williams.

In any event, the state court granted the motion to enforce. Fugett then tried vacating the settlement, but the state court denied his request. He asked for further time to pay the tax debt,

and eventually filed for relief under the Bankruptcy Code.  At least $200,000 of the tax debt remains unpaid.

Fugett's bankruptcy filing prompted Konnerth to file this dischargeability action. Konnerth argues that Fugett's failure to pay the tax debt resulted in approximately $200,000 worth of damages to him, and that those damages are nondischargeable for two reasons.  First, despite his promises in the settlement documents, Fugett never intended to pay the tax debt.  And second, because the tax debt arose from a contempt order, it is per se nondischargeable as the result of a willful and malicious injury.

## BACKGROUND

Plaintiffs allege as follows:

### ISI Shareholder Lawsuit Filed in State Court

Tyson Michael Garbrecht and Denis Williams filed suit in the Circuit Court of Will County against Richard Fugett, Reed Konnerth and Michael Koziol.  This suit involved disagreements regarding ownership of stock in ISI and breaches of fiduciary duty.  Fugett, Konnerth and Koziol filed counterclaims.  Complaint ¶ 8-9.  ISI's books showed that 10,000 shares of common stock had been authorized, with Fugett owning 5,500 shares, Koziol and Garbrecht each owning 2,000 shares and Williams owning 500 shares, but the parties disputed whether this was accurate.  Complaint, Ex. F (the "Settlement Agreement").

In the course of that litigation, the Will County Court ordered that Fugett, Koziol, Konnerth and ISI "shall not take any actions by the Board of Directors of ISI to incur debt, dilute shares or stock, take distributions or transfer firm asset[s] including wasting or disposing of the assets that are outside the ordinary course of business; until further order of Court. . .". Complaint, Ex. A (the "July 2013 Order").

About a year and a half later, the Will County Court appointed a custodian for ISI. Complaint ¶ 11.

The Internal Revenue Service, Illinois Department of Revenue and Illinois Department of Employment Security subsequently levied against ISI for failure to pay certain employment taxes (the "ISI Tax Debt") and issued a lien on ISI's assets. Complaint ¶¶ 12 and 13.

The Will County Court Enters an Order of Contempt against Fugett and Koziol

Following the tax levy, Garbrecht and Williams filed a petition to issue a rule to show cause, and the Will County Court held an evidentiary hearing. The court found Fugett and Koziol in contempt of the July 2013 Order. Complaint ¶ 14. The complaint contains no allegations regarding the evidence heard by the Will County Court, and no explanation of why Konnerth, who was also bound by the July 2013 Order, was not held in contempt. A copy of the petition to issue the rule is not attached to the complaint.

On December 23, 2014, the Will County Court ordered "Fugett and Koziol, jointly and severally, to pay funds to ISI's Custodian, not available from current ISI revenue, necessary to satisfy the payment of all scheduled obligations under existing agreement [sic] as set forth below or amended agreement, related to the payroll taxes incurred during the period prior to the Court appointing the Custodian for ISI . . . the existing payment schedule is $10,000 due 12/28/14, $10,000 due 1/28/15 and the balance due 2/28/15." Complaint, Ex. E (the "Contempt Order").

As of December 2014, the ISI Tax Debt totaled approximately $505,603.54. Complaint ¶ 16.

Over the next few months, Fugett and Koziol paid $50,000 to the IRS, and negotiations ensued to extend the payment date on the remaining balance. Complaint ¶¶ 18-23.

Encouraged by these negotiations and Fugett's and Koziol's preparations to make a lump-sum payment of the balance, plaintiffs Garbrecht and Williams as well as co-defendant Konnerth contemplated settlement of the Will County Court litigation. Complaint ¶ 24.

Fugett gave Konnerth certain assurances that his negotiations with the IRS were in good faith, and that as a result Fugett would be able to obtain a source of funding that would not otherwise be available to pay his portion of the ISI Tax Debt. Complaint ¶ 25.

The parties discussed several settlement options during the winter and spring of 2015. One settlement option was the sale of ISI's assets. Such a sale would allow the continued servicing of approximately 50 police and fire departments through licenses of CAPERS software. Konnerth attempted to retain the key employees who would provide services following such a sale. Complaint ¶¶ 27-28.

If Fugett and Koziol paid the ISI Tax Debt, they would not only purge their contempt, but also release the lien on ISI's assets and allow for a global settlement. Complaint ¶ 26.

The Parties Settle Their Differences and the Will County Lawsuit is Dismissed

In April 2015, the parties to the Will County litigation entered into a settlement agreement that resolved the suit, and the court dismissed the complaint. Settlement Agreement and Complaint ¶ 39.

The documents that resolved the Will County litigation were: the Settlement Agreement (Complaint, Ex. F); the Stock Purchase Agreements (Complaint, Exs. G and H); the Asset Purchase Agreement (Complaint, Ex. I); the Membership Interest Pledge Agreements (Complaint, Exs. J and K); and a Dismissal Order from the Will County Court (Complaint, Ex. L).

The settlement basically provided for Fugett and Koziol to buy out Garbrecht's and Williams' interests in ISI. Complaint ¶¶ 30-31. How would Fugett and Koziol make the payments? Capers North America LLC and Capers Worldwide – both solely owned by Konnerth – would purchase the software, contracts and accounts receivable that made ISI valuable. The scheduled payments for those assets would be made directly to Garbrecht and Williams, satisfying Fugett's and Koziol's obligation to them. Complaint ¶ 33; Asset Purchase Agreement.

As security for the payments, Konnerth pledged his membership interests in Capers North America and Capers Worldwide. Complaint ¶ 36; Membership Interest Pledge Agreements.

One of the conditions precedent to Konnerth's purchase of ISI's software, contracts and accounts receivable was that Fugett and Koziol had to pay off the ISI Tax Debt:

> Immediately upon execution of this Letter, Koziol and Fugett shall transfer such of their assets in their respective 401k retirement accounts to the IRS as representing their personal liability for such. Seller [ISI and Capers LLC] and Buyer [Capers North America and Capers Worldwide] shall enter into negotiations to resolve the current IRS obligation in order to provide Purchaser with assets that are free of any liens. Nothing herein limits the Seller's ability to sell other assets to satisfy the IRS lien.

Asset Purchase Agreement at § 6(c) ("Purchaser" is not defined.) See also the Stock Purchase Agreements at Section 7 (in which Fugett and Koziol agreed that they would ensure that the ISI Tax Debt would be paid and any lien removed by September 1, 2015, subject to negotiations over a reasonable extension of time).

The Settlement Agreement listed ten events of default, including failing to give Garbrecht and Williams a first position security interest that included all of the CAPERS business. This provision was "subject to negotiations among the parties over reasonable extensions of time should the IRS debt not be paid in full by September 1, 2015." Settlement Agreement at § 10(d).

6

If Fugett, Koziol or Konnerth filed for relief under the Bankruptcy Code, this would also constitute an event of default. Id. at § 10(h). Koziol filed for relief under Chapter 7 of the Bankruptcy Code on August 28, 2015. Case No. 15 B 29561 (Bankr. N.D. Ill.).[1]

In the event of a default, Garbrecht's and Williams' remedies included the immediate enforcement of all pledge agreements, including Konnerth's pledge of his membership interests in Capers North America and Capers Worldwide. Id. at § 11; Complaint ¶ 37.

Payment of the ISI Tax Debt

Koziol, Fugett and Konnerth discussed dates for meeting with the IRS to make payment and to secure the release of the IRS lien. Complaint ¶ 40.

Plaintiffs allege that Fugett deliberately withheld from them his true intentions to renege on his promises in the Settlement Agreement and the Asset Purchase Agreement. Complaint ¶ 38.

Fugett contacted Konnerth and Koziol to inform them that he was in the process of liquidating his 401(k) account and to arrange with Koziol the date to meet with the IRS to make such payment. Complaint ¶ 41.

Koziol transferred $210,675.43 from his 401(k) to the IRS at the end of May 2015. Complaint ¶ 42.

Fugett did not attend a meeting at the IRS and did not pay his agreed upon portion of the ISI Tax Debt. Complaint ¶ 43. Plaintiffs allege that Fugett's failure to liquidate his 401(k) and to make payment to the IRS was a material breach of the Settlement Agreement. Complaint ¶ 45.

---

[1] Although this fact was not mentioned in the complaint, the court may take judicial notice of it pursuant to F.R.E. 201. It is a fact that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, i.e., the docket maintained by the clerk of this bankruptcy court. Rule 201 provides that a court may take judicial notice on its own, at any stage of the proceeding.

Konnerth filed a motion to enforce the Settlement Agreement in the Circuit Court of Will

County.   Complaint ¶ 47.  In response, Fugett argued that dismissal of the underlying litigation

vitiated the effect of the Contempt Order and relieved him of personal liability for the ISI Tax

Debt.  Complaint ¶ 48.

The Will County Court granted Konnerth's motion to enforce against Fugett and Koziol

jointly and severally.  Complaint, Ex. M.

Three weeks later, the Will County Court found that "Fugett, through counsel, has taken

the steps to liquidate his 401k in ISI to pay the amounts due to allow for the lifting of the IRS'

lien on certain assets of ISI / Capers LLC and informed the Court that it should take

approximately two weeks to complete the process."  It set a further status hearing two weeks out.

Complaint, Ex. N.

Fugett Seeks to Vacate the Settlement Agreement

Before that further status hearing occurred, Fugett filed a motion to vacate the Settlement

Agreement.  Complaint ¶ 51.  The Will County Court denied the motion and held that "Fugett's

payment of the amount due to the IRS/IDES/IDR for payroll liabilities unpaid to the IRS, Illinois

Department of Revenue and Illinois Department of Employment Security as of today's date, with

such full payment to be made on or before <u>November 30, 2015</u> pursuant to this Court's August

10, 2015 order enforcing the parties' Settlement Agreement and Asset Purchase Agreement."

Proof of payment was to be provided on that same date.  Complaint, Ex. O (emphasis in

original).

Plaintiffs allege that while Fugett was taking steps to liquidate his ISI 401(k) and transfer

those funds to an individual IRA, he was not making arrangements to pay the ISI Tax Debt.

Complaint ¶ 57.

Konnerth filed a petition to hold Fugett in contempt of the order requiring payment by November 30, 2015. At a hearing on December 3, 2015, Fugett's counsel informed the Will County Court that he had filed for relief under the Bankruptcy Code. Enforcement proceedings ceased. Complaint ¶¶ 58-59.

Plaintiffs allege that Fugett misrepresented that he intended to perform his obligations under the various agreements that documented the settlement. Complaint ¶ 67. They further allege that he knew at the time he entered into the Settlement Agreement that he would not fulfill his obligation to pay the ISI Tax Debt, which was a material and essential element of the Settlement Agreement. Complaint ¶¶ 68-69.

Plaintiffs allege that Fugett intended to deceive them by making misrepresentations and false statements regarding his promise to pay the ISI Tax Debt. He did so in order to avoid the consequences of continued violation of the Contempt Order, to obtain the dismissal of the Will County litigation, and to attempt to shift liability for the ISI Tax Debt to Konnerth and Capers North America. Complaint ¶ 70.

Plaintiffs allege that Fugett intended to deceive them by falsely stating that he would meet with them and Koziol at the IRS where Koziol and Fugett were to make the payments from the 401(k) accounts in order to obtain a release of lien from the IRS. Complaint ¶ 71.

Plaintiffs contend that they justifiably relied on Fugett's false statements and deceptive conduct, believing that Fugett intended to comply with the terms of the Settlement Agreement and the negotiations directly with the IRS. Complaint ¶ 72.

But for Fugett's promise to perform under the Settlement Agreement, Plaintiffs allege that they would not have entered into the Settlement Agreement. Complaint ¶ 73.

Plaintiffs allege that the result of Fugett's actions is that they suffered damages in the amount of approximately $200,000. Complaint ¶ 75.

Plaintiffs allege that when Fugett refused to pay the ISI Tax Debt, he believed that they were substantially certain to be injured. His failure to pay was done with the intent to injure them, and without justification or excuse. Complaint ¶¶ 89-92.

## LEGAL DISCUSSION

Fugett moves to dismiss this complaint pursuant to Fed. R. Bankr. P. 7012(b), which incorporates Fed. R. Civ. P. 12(b)(6). Fugett argues that each count fails to state a claim upon which relief may be granted.

<u>Standards for Reviewing Complaints and Motions to Dismiss</u>

Fed. R. Civ. P. 8, made applicable in adversary proceedings pursuant to Fed. R. Bankr. P. 7008, provides guidance for plaintiffs regarding the requirements for stating a claim.

**(a) Claim for Relief.** A pleading that states a claim for relief must contain:

> **(1)** a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> **(2)** a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> **(3)** a demand for the relief sought, which may include relief in the alternative or different types of relief.

This pleading standard does not require detailed allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

As the Seventh Circuit recently instructed:

In evaluating the sufficiency of the complaint, we construe it in the light most
favorable to the nonmoving party, accept well-pleaded facts as true, and draw all
inferences in [the nonmoving party's] favor. Although a party need not plead
detailed factual allegations to survive a motion to dismiss, mere labels and
conclusions or a formulaic recitation of the elements of a cause of action will not
do.  Instead, [t]o survive a motion to dismiss, a complaint must contain sufficient
factual matter, accepted as true, to state a claim to relief that is plausible on its
face.

Berger, et al. v. National Collegiate Athletic Association, et al., 843 F. 3rd 285, 289-90 (7th Cir.

2016) (citations and quotations omitted).

Iqbal and its predecessor, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), provide

a more rigorous test for complaints than that previously applied in this Circuit. The court will

review this motion to dismiss under that stricter standard, although it considers well-pleaded

facts and the reasonable inferences drawn from them in the light most favorable to the plaintiff

when determining whether the complaint states a plausible claim to relief.  Reger Dev., LLC v.

National City Bank, 592 F. 3rd 759, 763 (7th Cir.), cert. denied, 561 U.S. 1026 (2010). Although

well-pleaded facts are viewed in a plaintiff's favor, allegations that are no more than conclusions

are not presumed to be true for purposes of deciding this motion to dismiss.  See Iqbal, 556 U.S.

at 679.

<u>Counts I and II Fail to State a Claim</u>

Counts I and II of the complaint are, frankly, somewhat confusing.  Count I is titled

"Fraudulent Misrepresentation" and Count II is titled "False Representations, False Pretenses or

Actual Fraud (11 U.S.C. § 523(a)(2)(A))".  Count I sets forth several allegations about Fugett's

actions and intent with regard to the Settlement Agreement, and then requests entry of a money

judgment.  Although Count II repeats and realleges all previous paragraphs, as subsequent counts

generally do in most complaints, it contains only two new allegations:

79.   The amount due and owing by Fugett under the terms of the
Settlement Agreement to consummate the transactions as contemplated therein

constitutes "money, property, services, or an extension, renewal or refinancing of credit" within the meaning of Section 523(a)(2), from which Fugett received a financial benefit.

    80.    Fugett made fraudulent representations to Konnerth/Capers in entering into the Settlement Agreement and the Agreements incorporated therein.

In the prayer for relief following Count II, Plaintiffs request "a determination that the a [sic] judgment under Count I is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A)." Counts I and II, therefore, will be considered together as one request for a nondischargeable money judgment pursuant to § 523(a)(2)(A):

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>>
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...

Pleading Fraud with Particularity

The parties focus on whether Plaintiffs alleged fraud with the requisite specificity. Pursuant to Fed. R. Civ. P. 9, made applicable via Fed. R. Bankr. P. 7009, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." They agree that this means a "plaintiff must plead the 'who, what, when, and where' of the alleged fraud." Uni*Quality, Inc. v. Infotronx, Inc., 974 F. 2nd 918, 923 (7th Cir. 1992). Although Rule 9 is read in conjunction with Rule 8, which requires complaints to contain only a "short and plain statement of the claim," our Circuit has instructed its lower courts that when alleging fraud, a complaint must contain "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Rocha v. Rudd, 826 F. 3rd 905, 911 (7th Cir. 2016) (citation omitted).

12

While the parties agree on the standard under Rule 9, they obviously disagree as to whether this complaint pled fraud with the required particularity. Plaintiffs argue that the complaint identifies Fugett (who), the content of his misrepresentations (what) and the timing during the global settlement negotiations (when). But Plaintiffs are wrong that the complaint's allegations are sufficiently particular.

The complaint's allegations are extremely vague about what Fugett did or said to mislead the Plaintiffs. In their response to Fugett's motion to dismiss, Plaintiffs refer to paragraphs 17 through 27 of the complaint to support their claim of particularity. In those paragraphs, Plaintiffs alleged that Fugett and Koziol began making payments to the IRS and engaged in negotiations. Plaintiffs were "encouraged" by these negotiations. This section of the complaint culminates with the allegation that "Fugett gave Konnerth/Capers certain assurances that negotiations with the IRS were in good faith and that the result of such negotiations would permit Fugett to obtain a source of funding that would not otherwise be available to pay his portion of the ISI Tax Debt." Complaint at ¶ 25.

What were those "certain assurances?" When were the assurances made? To whom were they made? Did Capers North America LLC even exist at this point? What was said? Was any of it in writing or was it all verbal? Where were the parties when these assurances were given? These are not the type of details that must wait for discovery, because the allegations are that the assurances were given to Plaintiffs. Plaintiffs make no allegations that would enable the court to determine whether the statements Fugett made – whatever they were, whenever they were made and to whom – could plausibly be construed as fraudulent.

In further support of their argument that the complaint is sufficiently particular, Plaintiffs referred to paragraphs 33 through 35 as well as 37. These paragraphs make allegations regarding

the agreements into which Fugett entered. Most specifically, paragraph 35 repeats a section of

the agreements in which Fugett and Koziol promised to (1) pay "immediately upon execution of

this [Agreement] . . . such of their assets in their respective 401(k) retirement accounts to the

IRS as representing their personal liability for such" and (2) "ensure that ISI's debt to IRS/IDR is

paid, and any lien is removed on or before September 1, 2015."

Later in the complaint, Plaintiffs make numerous allegations that these promises were

misrepresentations, because Fugett never intended to perform under the Settlement Agreement.

Complaint at ¶ 67. He "knew at the time that he would not fulfill his obligation to pay the ISI

Tax Debt as required under the Stock Purchase Agreements and the Asset Purchase Agreement."

Complaint at ¶ 69.

<u>Even if Plaintiffs Had Pled Fraud with the Required Particularity, Their Claim is based on a
Promise of Future Action</u>

This allegation brings the court to a thornier problem than whether fraud has been pled

with particularity, for that original problem is one that can be resolved with an amended

complaint and additional detail. More troubling is the question of whether a promise to take an

action in the future can <u>ever</u> be the basis of a nondischargeability action, no matter how well pled

the complaint.

In order to be actionable under § 523(a)(2)(A), a representation must relate to a present or

past fact. <u>Santiago v. Hernandez</u>, 452 B.R. 709, 723 (Bankr. N.D. Ill. 2011). A representation

about a future act is only actionable when the debtor made the representation with no intention of

keeping his promise. <u>Id.</u> "Breach of contract is not fraud; only making a promise with the intent

not to keep it deserves that epithet." <u>Perlman v. Zell</u>, 185 F. 3rd 850, 852 (7th Cir. 1999)

(citations omitted). <u>See U.S. ex rel. Main v. Oakland City University</u>, 426 F. 3rd 914, 917 (7th

Cir. 2005) ("failure to honor one's promise is (just) breach of contract, but making a promise that

one intends not to keep is fraud") (emphasis in original; citations omitted), cert. denied, 547 U.S. 1071 (2006). If every breached contract gave rise to a dischargeability claim, the bankruptcy courts would be clogged with the resulting litigation.

Plaintiffs allege that Fugett had the intent not to keep his promise at the time he signed the relevant agreements, that he "deliberately withheld from Konnerth/Capers and Koziol his true intentions to renege on his agreements in the Settlement Agreement and the Asset Purchase Agreement." Complaint at ¶ 38.

But this particular allegation is undercut by other allegations in the complaint, and so is not well-pled. Plaintiffs also allege that Fugett discussed meeting dates with the IRS. They allege that Fugett contacted them – not that they called to get a commitment from him, but that he made the contact – to inform them that he was in the process of liquidating his 401(k) account. Indeed, the Will County Court later found that "Fugett, through counsel, has taken the steps to liquidate his 401k in ISI to pay the amounts due to allow for the lifting of the IRS' lien on certain assets of ISI / Capers LLC and informed the Court that it should take approximately two weeks to complete the process." Taking steps to fulfill a promise, as alleged here, contradicts the allegation that the promise was made with no intent to honor it. See, e.g., Morales v. Giddens, 514 B.R. 542, 552 (Bankr. N.D. Ill. 2014) ("part performance or attempts to perform generally suggest a lack of fraudulent intent," although not in that case) (citation omitted).

Moreover, even if Fugett never intended to keep the promises he made in the Settlement Agreement documents, the Plaintiffs (or at least Konnerth) were Fugett's co-defendants. Fugett's promises in the Settlement Agreement were made to Garbrecht and Williams, the Will County Court plaintiffs, not to Konnerth. Although the Will County Court granted Konnerth's

motion to enforce the Settlement Agreement, is not at all clear what standing Konnerth has in this court to claim he was harmed by his co-defendant's broken promises. The Settlement Agreement provides remedies for default in section 11, and all of the remedies accrue to Garbrecht and Williams. The only document in which Fugett and Konnerth were on opposite sides was the Asset Purchase Agreement.[2]

Finally, that promise in the Asset Purchase Agreement that Fugett would transfer his 401k is explicitly limited to his personal liability. Fugett asks the court to focus on this limitation by arguing that his personal liability is $0, but it is important for another reason. Just two sentences past this limitation, the Asset Purchase Agreement provides that "[n]othing herein limits the Seller's [ISI and Capers LLC] ability to sell other assets to satisfy the IRS lien." So Fugett might have intended all along to make sure that the IRS lien – and his personal liability for it – was satisfied in some fashion other than by liquidating his 401k. That intent would not have been fraudulent, because such an outcome was contemplated in the very same paragraph in which Fugett made his promise to Konnerth.

The allegations in the complaint do not provide a basis for the court to reasonably draw the inference that Fugett never intended to keep his promises. Even if the allegations are accepted as true, they do not "state a claim to relief that is plausible on its face." Therefore, the complaint fails to state a claim under § 523(a)(2)(A). This failure cannot be cured with an

---

[2] It would have been helpful to have a copy of Konnerth's motion to enforce. He refers to it in the complaint as a motion to enforce the Settlement Agreement (¶ 47) but the order granting the motion describes it as a motion to enforce the Settlement Agreement, Asset Purchase Agreement (Ex. M). Perhaps a copy of the motion would have resolved the court's concern about Konnerth's standing.

amended complaint alleging fraud with more particularity; Plaintiffs have pled too many

allegations that negate any inference of fraud.[3]

For all of the reasons stated above, the court grants the motion to dismiss Counts I and II.

<u>Count III Fails to State a Claim, and Leave to Amend Will be Granted</u>

In Count III, Plaintiffs argue that:

> the ISI Tax Debt arising from the Contempt Order is nondischargeable pursuant to
> § 523(a)(6). That issue may be further broken into two separate parts: (1) does
> debt arising from a contempt order constitute non-dischargeable debt; and (2)
> does the nondischargeable nature of debt survive the debt's incorporation into a
> settlement agreement? The answer to both of these questions is <u>yes</u>.

Response at 9 (emphasis in original). Essentially, Plaintiffs are asserting that the Contempt

Order must be given preclusive effect in this proceeding, because debts arising from contempt

orders are per se nondischargeable.[4]

Pursuant to 11 U.S.C. § 523(a)(6):

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title
> does not discharge an individual debtor from any debt— . . .
>
> > (6)    for willful and malicious injury by the debtor to another entity or to
> > the property of another entity.

The Supreme Court clarified the meaning of this subsection, stating that "only acts done

with the actual intent to cause injury" come within its scope. <u>Kawaauhau v. Geiger</u>, 523 U.S. 57,

61 (1998). Our Circuit later specified "that a willful and malicious injury, precluding discharge

in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had

---

[3] Since the court is dismissing Counts I and II, it need not address Fugett's argument that Koziol's filing for relief
under the Bankruptcy Code, as an earlier-in-time default under the Settlement Agreement, was the proximate
cause of Plaintiffs' damages.

[4] In their response, Plaintiffs focus on the nature of Fugett's obligation under the Contempt Order. To the extent
that Plaintiffs attempted to state a claim in the complaint that when Fugett failed to perform under the Settlement
Agreement, he knew or was substantially certain that Plaintiffs would be injured, they appear to have abandoned
that attempt in their response to the motion to dismiss.

17

no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." <u>Jendusa-Nicolai v. Larsen</u>, 677 F. 3rd 320, 324 (7th Cir. 2012).

Therefore, in order to survive a motion to dismiss, the complaint must contain sufficient well-pleaded allegations, accepted as true, to allow the court to draw the reasonable inference that Fugett inflicted injury on Plaintiffs knowing that he had no legal justification to do so, and either desired to inflict that injury or knew it was highly likely to occur from his actions.

<u>The Basis for the Contempt Order</u>

In July 2013, the Will County Court ordered Fugett to avoid taking any actions that would waste ISI's assets. The Internal Revenue Service and Illinois Department of Revenue subsequently levied against ISI for failure to pay certain employment taxes.

As a result of the taxing bodies' levy, the Will County Court found Fugett and Koziol in contempt of the July 2013 Order. On December 23, 2014, it ordered "Fugett and Koziol, jointly and severally, to pay funds to ISI's Custodian, not available from current ISI revenue, necessary to satisfy the payment of all scheduled obligations under existing agreement as set forth below or amended agreement, related to the payroll taxes incurred during the period prior to the Court appointing the Custodian for ISI . . .". This was the Contempt Order, and it created a liability that Plaintiffs now allege was based on Fugett's willful and malicious actions.

As discussed above, the parties eventually resolved their differences, memorializing the resolution in the Settlement Agreement and related documents. In these documents, Fugett agreed to "transfer such of [his] assets in [his] . . . 401k retirement accounts to the IRS as representing [his] personal liability for such" and that he would ensure that the ISI Tax Debt would be paid and any lien removed by September 1, 2015.

As we now know, Fugett did not pay half of the ISI Tax Debt. The Will County Court eventually granted Konnerth's motion to enforce and, after Fugett sought to vacate the Settlement Agreement, ordered "Fugett's payment of the amount due to the IRS/IDES/IDR for payroll liabilities unpaid to the IRS, Illinois Department of Revenue and Illinois Department of Employment Security as of today's date, with such full payment to be made on or before November 30, 2015 pursuant to this Court's August 10, 2015 order enforcing the parties' Settlement Agreement and Asset Purchase Agreement."

Fugett argues that there is no debt because he was only required to pay his personal liability, and the amount of his personal liability is $0. Plaintiffs respond by asserting that the Full Faith and Credit Act estops Fugett from denying his liability.

Debts Arising from Contempt Orders are Not Per Se Nondischargeable

Before considering the question of whether the Full Faith and Credit Act precludes Fugett from contesting the amount of his liability, the court must resolve a threshold issue. Even if Plaintiffs were to prevail on the full faith and credit question, are they correct that Fugett's debt – in whatever amount – is nondischargeable because it arises from the Contempt Order? In other words, does the debt's source in a contempt order preclude litigation over its nondischargeability?

Standard for Application of Issue Preclusion

Collateral estoppel (issue preclusion) principles apply in adversary proceedings to except a debt from discharge. Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991). "The effect of a judgment in subsequent litigation is determined by the law of the jurisdiction that rendered the judgment." In re Catt, 368 F. 3rd 789, 790-91 (7th Cir. 2004) (citations omitted). In our case, an

Illinois state court rendered the judgment. Therefore, Illinois law determines the effect of the judgment:

> First, the issue decided in the prior adjudication must be identical with the one presented in the suit in question. Second, there must have been a final judgment on the merits in the prior adjudication. Third, the party against whom estoppel is asserted must have been a party or in privity with a party to the prior adjudication. Additionally, the party sought to be bound must actually have litigated the issue in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation.

Am. Family Mut. Ins. Co. v. Savickas, 193 Ill. 2nd 378, 387 (Ill. 2000) (citations omitted). See Gambino v. Koonce, 757 F. 3rd 604, 608 (7th Cir. 2014).

The key questions here are whether the issue decided in the prior adjudication was identical to the issue before this court, and whether a decision on the issue was necessary to that prior judgment. In a dischargeability proceeding, the issue is whether the defendant's actions were willful and malicious. Plaintiffs cite four cases holding that willful and malicious conduct may be evidenced by the entry of a contempt order.[5] But as a different court found, Musilli and the cases it cites (including Williams and Nangle) "highlight divergent views of what is required to establish a willful and malicious injury for purposes of § 523(a)(6)." Liddell v. Peckham, 442 B.R. 62, 80 (Bankr. D. Mass. 2010).

Courts "must demonstrate with clarity and certainty the . . . court's determination in the prior proceedings." Midwest Operating Engineers v. Dredge, 147 F. Supp. 3rd 724, 736 (N.D. Ill. 2015), aff'd, 844 F. 3rd 627 (7th Cir. 2016), citing Jones v. City of Alton, Ill., 757 F. 2nd 878, 885 (7th Cir. 1985). The burden of proof on the party invoking issue preclusion is heavy, and speculation as to the prior court's findings will not satisfy it. Jones, 757 F. 2nd at 885.

---

[5] Musilli v. Droomers, 379 Fed. Appx. 494 (6th Cir. 2010); Williams v. Int'l Brotherhood of Elec. Workers Local 620, 337 F. 3rd 504 (5th Cir. 2003); Siemer v. Nangle, 274 F. 3rd 481 (8th Cir. 2001); Morris v. Charron, 541 B.R. 656 (Bankr. W.D. Mich. 2015).

<u>If the Prior Court's Determination is Not Clearly Based on Actions that are Willful and
Malicious, Issue Preclusion Does Not Apply</u>

Therefore, this court will follow the line of cases that hold that it is not a foregone

conclusion that obligations arising from contempt orders are nondischargeable. <u>See Suarez v.

Barrett</u>, 400 B.R. 732, 737 (B.A.P. 9th Cir. 2009) ("Section 523(a)(6) does not make 'contempt'

sanctions nondischargeable per se, and neither does any other subpart of section 523(a).

Whether contempt sanctions are nondischargeable accordingly depends not on whether they are

labeled as 'contempt,' but on whether the conduct leading to them was 'willful and malicious.'"),

<u>aff'd</u>, 529 Fed. Appx. 832 (9th Cir. 2013); <u>Field v. Hughes-Birch</u>, 499 B.R. 134, 150 (Bankr. D.

Mass. 2013) ("A debtor's failure or refusal to obey a court order, alone, is not necessarily

determinative of a finding of willful and malicious injury under § 523(a)(6)."); <u>FNA Group, Inc.

v. Arvanitis</u>, 523 B.R. 633, 640-41 (Bankr. N.D. Ill. 2015) ("the state court contempt order did

not have findings relating to how Arvanitis acquired the property (lawfully? fraudulently? by

force? some other way?). Nor does it contain any indication of Defendant's state of mind.

Therefore, the issue decided by the state court in the contempt order was not identical to either

issue of nondischargeability to be decided here.") (footnote omitted); <u>Pearle Vision, Inc. v.

Romm</u>, 2006 WL 3692416, *3 (Bankr. N.D. Ill. Dec. 13, 2006) ("Whether the sanctions against

Romm are nondischargeable accordingly depends, not on whether they are labeled as 'contempt'

or as something else, but on whether the conduct leading to them was 'willful and malicious.'").

In order to afford state court contempt orders preclusive effect, the better-reasoned

position is that federal courts must find that those state court inquiries "mirrored the inquiry of

the bankruptcy court under § 523(a)(6)." <u>French Kezelis & Kominiarek, P.C. v. Carlson</u>, 2000

WL 226706, *5 (N.D. Ill. Feb. 22, 2000), <u>aff'd</u>, 2001 WL 1313652 (7th Cir. Oct. 23, 2001). <u>See,

e.g.</u>, <u>Hoffman v. Anstead</u>, 436 B.R. 497, 503 (Bankr. N.D. Ohio 2010) ("[n]o specific finding . . .

was made by the court concerning the Debtor's subjective intent . . . [and] the state court was not required to make a finding regarding the Debtor's state of mind in order to impose sanctions."

### The Contempt Order was Not Clearly Based on Willful and Malicious Actions by Fugett

For the Contempt Order to be afforded preclusive effect, this court must determine if the factual inquiry in the state court examined whether Fugett inflicted injury on Plaintiffs knowing that he had no legal justification to do so, and either desired to inflict that injury or knew it was highly likely to occur from his actions.

Based on the allegations in the complaint and the exhibits attached thereto, there was no such examination in the Will County Court. Simply stating in the response that the Will County Court conducted a full evidentiary hearing is not sufficient, since we do not know the nature of the inquiry conducted in that hearing. There were no findings in the Contempt Order concerning Fugett's intent or state of mind when he violated the July 2013 Order. And if there were oral findings in the state court following the evidentiary hearing, there were no allegations in the complaint regarding them. Finally, Plaintiffs have not alleged that the Will County Court found Fugett intended to injure them, as opposed to the state court plaintiffs, Garbrecht and Williams.

Although all reasonable inferences must be drawn in the Plaintiff's favor, there must be well-pleaded facts allowing for such inferences. Instead, based on the lack of allegations in the complaint and in the Contempt Order regarding Fugett's intent and state of mind, it is reasonable for this court to draw the inference that ISI Tax Debt accrued because Fugett was inattentive or negligent. If that were the case, the debt arising from that negligence, as embodied in the Contempt Order, would not satisfy the requirements for a finding of nondischargeability under § 523(a)(6).

22

While Fugett's obligation is not per se nondischargeable simply because it is the result of the Contempt Order, Plaintiffs will be given an opportunity to amend the complaint. It is still possible that his obligation was the result of willful and malicious actions. If Plaintiffs have "sufficient factual matter" to support allegations that Fugett acted knowing he had no legal justification, and that he desired to inflict injury on the Plaintiffs in this proceeding, as opposed to inflicting injury on the Will County Court plaintiffs, Garbrecht and Williams,[6] or knew such injury was highly likely to occur, then the amended Count III would survive a motion to dismiss. But as it is, the motion to dismiss Count III must be granted.[7]

Count IV Fails to State a Claim

Count IV is brought for breach of contract, a cause of action that does not apply in dischargeability proceedings. It must therefore be dismissed as it fails to state a claim. In their response to the motion to dismiss, Plaintiffs indicate that this count should serve as an informal proof of claim.

"The informal proof-of-claim doctrine is an equitable doctrine that permits bankruptcy courts to treat a creditor's late formal claim as an amendment to a timely informal claim." In re marchFIRST, Inc., 573 F. 3rd 414, 418 (7th Cir. 2009). The court takes judicial notice of the claims register for the underlying bankruptcy case. Plaintiffs each filed a proof of claim on November 19, 2016, four days after the claims bar date but while the court's decision on this motion to dismiss was pending.

A request in a response to a motion to dismiss is not the proper procedure for addressing this matter. If the Trustee objects to Plaintiffs' proofs of claim on the grounds that they are late-

---

[6] Even if Fugett intended to inflict harm on Plaintiffs, any amended complaint must detail how Fugett intended to harm Capers North America LLC, an entity that did not exist at the time the Contempt Order was entered.

[7] Since the court is not giving collateral estoppel effect to the obligation described in the Contempt Order, it is not necessary at this time to determine whether Plaintiffs are correct that incorporating that obligation into the Settlement Agreement did not change its nature.

filed, and if Plaintiffs argue in response that the claims should relate back to the date of filing of this adversary proceeding, the court will resolve the issue at that time. Without an objection to claim on file, there is no present controversy.[8]

For the reasons stated above, the motion to dismiss Count IV is granted.

## CONCLUSION

For all of the reasons stated above, Fugett's motion to dismiss is granted as to Counts I, II and IV. Plaintiffs are given leave to file an amended complaint under § 523(a)(6) in accordance with the analysis described above in the discussion of Count III.

Any amended complaint shall be filed on or before April 13, 2017. This proceeding is set for status on Thursday, May 4, 2017 at 10:30 a.m.


Date:  _____MAR 1 6 2017_____          _____
                                       PAMELA S. HOLLIS
                                       United States Bankruptcy Judge


---

[8] Dismissal of Count IV is without prejudice to Plaintiffs raising the informal claim argument, should it become necessary. It is not an indication of how the court would rule on any grounds for objection to Plaintiffs' proofs of claim.